IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES ex rel.<br>MARTIN FLANAGAN, | * |
| | * |
| Plaintiff-Relator, | * |
| v. | *      Civil Action No. GLR-14-665 |
| | * |
| FRESENIUS MEDICAL CARE<br>HOLDINGS, INC., d/b/a | * |
| FRESENIUS MEDICAL CARE<br>NORTH AMERICA, | * |
| Defendant. | * |

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Fresenius Medical Care Holdings,

Inc. d/b/a Fresenius Medical Care North America's ("Fresenius") Motion to Transfer

Pursuant to 28 U.S.C. § 1404(A) (ECF No. 57).[1] The Motion is ripe for disposition, and no

hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons set forth below,

the Court will grant Fresenius' Motion.

---

[1] Also pending before the Court is Fresenius' Motion to Dismiss Relator's Amended
Complaint (ECF No. 58). Relator argues that, because Defendant's Motion to Dismiss is
based in part on jurisdictional grounds, the Court must address the Motion to Dismiss
before the Motion to Transfer Venue. The Court is unpersuaded by Relator's argument.
See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007)
("[T]here is no mandatory sequencing of jurisdictional issues[.]" (internal quotation marks
and citation omitted)); Morris v. Nuzzo, 718 F.3d 660, 665–66 (7th Cir. 2013) ("The
district court . . . did not need to determine its own subject matter jurisdiction prior to
transferring the case[.]"); Oldham v. Penn. State Univ., 507 F.Supp.3d 637, 643, 650
(M.D.N.C. 2020) (deciding to transfer venue prior to considering jurisdictional challenge).
Accordingly, because the Court will grant Fresenius' Motion to Transfer, the Court will
decline to rule on Fresenius' Motion to Dismiss.

## I.    BACKGROUND[2]

Plaintiff-Relator Martin Flanagan ("Relator") worked for Fresenius for twenty-nine years, most recently as Director of Acute Market Development for the Fresenius Western Business Unit. (First Am. Compl. ¶ 11, ECF No. 51). Relator alleges that Fresenius engaged in a nationwide scheme to defraud Medicaid and Medicare. (Id. ¶¶ 1–2, 103). Among other things, Relator alleges that Fresenius violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"), by offering remuneration to health care providers in order to secure referrals. (Id. ¶ 2). Relator asserts that Fresenius provided this remuneration by providing acute care services to hospital inpatients below cost and by offering hospitals free services in order to obtain patient referrals after the patients were discharged from the hospital. (See generally id. ¶¶ 83–161).

Relator is a resident of the state of Texas. (Id. ¶ 11). Fresenius is headquartered in Waltham, Massachusetts. (Id. ¶ 13). Fresenius operates approximately 2,400 outpatient dialysis clinics in the United States, thirty-nine of which—i.e., roughly 1.6 percent—are in Maryland. (Id.). The First Amended Complaint does not indicate that Maryland has any special connection to this lawsuit—indeed, the word "Maryland" appears only ten times in Relator's 147-page First Amended Complaint, none of which describe events or persons that occurred in Maryland.[3] Indeed, Relator contends in his Opposition that "[w]hile [his]

---

[2] Unless otherwise noted, the Court takes the following facts from Capella's Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

[3] Relator may assert that he has alleged facts specific to Maryland, e.g., when he recounts information concerning the rates Fresenius charges for services delivered in Maryland. (See, e.g., First Am. Compl. ¶¶ 125, 126). These paragraphs, however, do not

allegations span all fifty states, the [First Amended Complaint] includes specific examples of wrongdoing in California, Illinois, Indiana, Michigan, New Jersey, North Carolina, Puerto Rico, Texas, and Washington." (Pl.-Relator's Opp'n Def.'s Mot. Transfer ["Opp'n"] at 1, ECF No. 62). Relator asserts that "[t]hird-party witnesses from these states . . . will be called to testify as to the facts of Defendant's wrongdoing." (Id.).

Relator contends that the alleged unlawful practices that were the subject of the First Amended Complaint were "standard business practice," that the strategy was known to "the highest level" of Fresenius management, that the decisions were "driven by corporate management," and that the practices "applied nationwide." (First Am. Compl. ¶¶ 88, 93, 96, 103). These alleged corporate-wide practices would have originated in Fresenius' headquarters in Massachusetts. (See Decl. Ronald Castle ["Castle Decl."] ¶ 54, ECF No. 57-2 ("At all times, virtually all corporate functions were centered, in terms of strategy and policy, in [Fresenius'] corporate headquarters in Massachusetts. Corporate-level personnel maintained offices in the headquarters facility in suburban Boston. Corporate records were maintained in the headquarters.")). According to Fresenius, policies relating to physician compensation and the pricing and negotiation of the acute contracts "were devised and have been monitored and enforced by personnel whose offices are in the Massachusetts headquarters, and whose activities were centered and documents reside there." (Id. ¶¶ 59–62, 67–68).

---

describe conduct unique to Maryland, but rather use Maryland as an example of activity occurring throughout the country.

Relator further alleges that certain joint venture arrangements Fresenius entered into with medical directors and other physicians violated the AKS. (First Am. Compl. ¶¶ 332–75). According to the First Amended Complaint, Fresenius employees drafted joint venture contracts based on a company-wide template, and a joint venture's profitability was analyzed by a team in Massachusetts and approved by Fresenius senior management. (Id. ¶¶ 342, 374).

On March 6, 2014, Relator filed this qui tam action against Fresenius under seal. (ECF No. 1). The case was unsealed on August 27, 2020 after the Government informed the Court it had decided not to intervene. (ECF Nos. 32, 33). Relator served the Complaint on Fresenius on November 20, 2020. (ECF No. 37). On January 19, 2021, Fresenius filed a Motion to Dismiss. (ECF No. 50).

On February 5, 2021, Relator filed a First Amended Complaint (ECF No. 51). The three-count Amended Complaint alleges violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729(a)(1)(A), (B), & (C). (Id. ¶¶ 376–88). On behalf of the United States, Relator seeks treble damages and penalties for each false claim, and on his own behalf seeks thirty percent of the government's recovery as well as his costs and attorneys' fees incurred in this action. (Id. at 144–45). Fresenius filed a second Motion to Dismiss, (ECF No. 58), along with the instant Motion to Transfer Venue, (ECF No. 57), on March 5, 2021. On April 19, 2021, Relator filed Oppositions to both Motions, (ECF Nos. 62, 63), and Fresenius filed Replies on May 17, 2021, (ECF Nos. 66, 67).

## II.   DISCUSSION

**A.   <u>Standard of Review</u>**

Motions to transfer are governed by 28 U.S.C. § 1404(a), which permits a district court to transfer a civil action to another district or division, "to prevent the waste of time, energy and money as well as to protect litigants, witnesses and the public against unnecessary inconvenience and expense." <u>Topiwala v. Wessell</u>, No. WDQ-11-543, 2012 WL 122411, at *6 n.21 (D.Md. Jan. 12, 2012) (quoting <u>Dicken v. United States</u>, 862 F.Supp. 91, 92 (D.Md. 1994)).

Courts in the Fourth Circuit "consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." <u>Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.</u>, 791 F.3d 436, 444 (4th Cir. 2015) (citations omitted).[4] The burden is on the moving party to show, by a preponderance of the evidence, that transfer to another forum is proper. <u>See</u> <u>Gilbert v. Freshbikes, LLC</u>, 32 F.Supp.3d 594, 607 (D.Md. 2014). "Ultimately, '[t]he decision whether to transfer is committed to the sound discretion of the trial court.'" <u>Hausfeld v. Love Funding Corp.</u>, 16 F.Supp.3d 591, 604 (D.Md. 2014) (alteration in original) (quoting <u>Mamani v. Bustamante</u>, 547 F.Supp.2d 465, 469 (D.Md. 2008)).

---

[4] In addition, "the transferee court must be a court in which the action could have been brought initially." <u>Dow v. Jones</u>, 232 F.Supp.2d 491, 499 (D.Md. 2002) (citing 28 U.S.C. § 1404(a)). The parties agree that this action could have been brought in the District of Massachusetts.

**B.**     <u>Analysis</u>

**1.      Deference to Plaintiff's Choice of Venue**

Ordinarily in the Fourth Circuit, "[u]nless the balance of the factors 'is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" <u>Hausfeld</u>, 16 F.Supp.3d at 604 (quoting <u>Collins v. Straight, Inc.</u>, 748 F.2d 916, 921 (4th Cir. 1984)). The weight accorded to a plaintiff's choice of venue "is lessened, however, when . . . the chosen forum is not the plaintiff's home." <u>Tse v. Apple Comput., Inc.</u>, No. L-05-2149, 2006 WL 2583608, at *2 (D.Md. Aug. 31, 2006). Here, Relator is a Texas resident. (First Am. Compl. ¶ 11).

Relator's choice of forum is also entitled to less deference because he is not a traditional plaintiff, but rather a relator in a <u>qui tam</u> action. <u>See</u> <u>Simonian v. Monster Cable Prods., Inc.</u>, 821 F.Supp.2d 996, 998 (N.D.Ill. Nov. 22, 2010) ("[T]he plaintiff in a <u>qui tam</u> action is actually the federal government, not [relator]. Therefore, contrary to [relator's] suggestion otherwise, his choice of venue is not entitled to substantial deference."); <u>United States ex rel. Howard v. Harper Constr. Co.</u>, No. 7:12-CV-215-BO, 2015 WL 9463103, at *2 (E.D.N.C. Dec. 28, 2015) ("Where, however, the relator is asserting the rights of the real party in interest—the United States Government—the Court believes that the relator's choice of forum carries less weight.").

Finally, "[w]hen the central facts of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference." <u>Ricoh Co. v. Honeywell, Inc.</u>, 817 F.Supp. 473, 481 (D.N.J. 1993). As set forth above, Relator does not allege any facts or describe any events in the First Amended Complaint that occurred in or relate

specifically to Maryland. Rather, the First Amended Complaint appears to reflect a scheme that was designed and orchestrated from Fresenius' headquarters in Massachusetts. Maryland appears to be just another state in which Fresenius operated dialysis clinics. See Tse, 2006 WL 2583608, at *3 ("The only connection that this case has to Maryland is the fact that Defendants sell their products . . . to Maryland residents. . . . [H]owever, Defendants sell their products and files all over the nation. This case, therefore, has no more connection to Maryland than it does to the other forty-nine states."). For all these reasons, the Court accords little weight to Relator's choice of forum.

### 2. Convenience of Venue for Parties and Witnesses

Fresenius argues that Massachusetts is the more convenient forum because "[t]he primary locus of Relator's claims is Massachusetts – where [Fresenius'] headquarters is located and where the challenged conduct occurred." (Mem. Supp. Mot. Transfer Pursuant 28 U.S.C. § 1404(a) ["Mot."] at 6, ECF No. 57-1). It is true that "the convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial." Capitol Payment Sys., Inc. v. Di Donato, No. ELH-16-882, 2017 WL 2242678, at *9 (D.Md. May 23, 2017) (quoting 15C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3854 (4th ed. 2008, 2020 Supp.)). But even so, as to "the convenience of the parties, it is undeniably more convenient for [Defendant] to have this case proceed in [the district] where its headquarters is located." E.E.O.C. v. FedEx Ground Package Sys., Inc., No. WMN-14-3081, 2015 WL 790500, at *2 (D.Md. Feb. 24, 2015). Thus, it is certainly material to the Court's analysis that Fresenius' senior management, who were allegedly responsible for designing and

implementing the policies at issue in the First Amended Complaint, are located in Massachusetts.

This Court has held that "[t]he convenience of the witnesses is 'perhaps the most important factor' in determining whether a transfer of venue should be granted." Mamani, 547 F.Supp.2d at 473 (quoting Cronos Containers Ltd. v. Amazon Lines, Ltd., 121 F.Supp.2d 461, 466 (D.Md. 2000)). Relator thus argues that Fresenius' Motion is deficient because it fails to identify non-party witnesses for whom Massachusetts would be a more convenient district. But such a showing is not necessary to grant a motion to transfer venue at this stage. See Dietrick v. Apex Sys., LLC, No. PX-19-6, 2019 WL 1745994, at *3 (D.Md. Apr. 18, 2019) (finding that "[a]lthough neither party, at this early stage of the litigation, proffers the particular location of non-party witnesses," it was nonetheless "far more convenient" to transfer the case to the forum where the defendant's headquarters were located); see also Wagner v. N.Y. Marriott Marquis, 502 F.Supp.2d 312, 315 (N.D.N.Y. 2007) ("[T]he convenience of both party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted.").

As to party witnesses, Relator asserts that Fresenius "has not offered any affidavits either from its own witnesses . . . detailing the hardship that would be entailed in traveling to Maryland to testify as opposed to traveling to Massachusetts." (Opp'n at 2). Relator doubles down on this argument later in his Opposition, asserting that Fresenius "does not provide affidavits or any evidence whatsoever detailing why travel to Baltimore, a mere ninety-minute flight away from Boston, would be a hardship for the witnesses upon which it intends to rely." (Id. at 7). But it is patently obvious to this Court that such a hardship

exists, i.e., that it is more convenient for an individual to "travel to" the district in which they are located than to a district hundreds of miles away. See Eaglewood Consulting, LLC v. Graphic Packaging Int'l, Inc., No. 2:10CV125, 2010 WL 11470424, at *3 (E.D.Va. Oct. 25, 2010) ("[T]he Court need not stretch its senses to conclude that many witnesses will be travelling from Defendant's headquarters in Georgia . . . . The convenience of party witnesses, then, counsels in favor of transfer."). Thus, it is simply not the case that, as Relator contends, Fresenius' "failure to discuss in detail who will testify and why Maryland is an inconvenient forum for those witnesses is fatal to its motion." (Opp'n at 7).

Relator next argues that Maryland has a "substantial connection with the alleged facts" because the "primarily aggrieved agency" in this qui tam action, the Centers for Medicare and Medicaid Services ("CMS"), is headquartered in this state. (Opp'n at 5). As a district containing many federal agencies, the United States District Court for the District of Columbia routinely entertains such arguments. It just as routinely rejects those arguments. See, e.g., United States v. Quicken Loans Inc., 217 F.Supp.3d 272, 276–77 (D.D.C. 2016) (finding that plaintiff's choice of forum "is entitled to little deference" because the claim's "only connection with the District of Columbia is that . . . government employees in this district received the allegedly false statements and claims"); Fed. Hous. Fin. Agency v. First Tenn. Bank Nat. Ass'n, 856 F.Supp.2d 186, 192 (D.D.C. 2012) ("Because there is no real connection between the District of Columbia and this litigation other than the presence of federal agencies in this forum, the Court accords little weight to the [plaintiff's] choice of forum." (internal quotation marks and citation omitted)); Shawnee Tribe v. United States, 298 F.Supp.2d 21, 25–26 (D.D.C. 2002) ("[M]ere

involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative."). Accordingly, the Court does not view CMS's involvement in this dispute as persuasive grounds to retain venue in this district.[5]

Relator asserts in his Opposition that the District of Maryland is more convenient as "important witnesses and their counsel live in or near Maryland." (Opp'n at 12). But as set forth below, Relator does not identify those "important witnesses," and "Section 1404(a) is [not] concerned with . . . the convenience of counsel." Cronos Containers, 121 F.Supp.2d at 466 n.4. The Court therefore attaches no relevancy to this contention. Relator also argues that shifting this action to Massachusetts would simply "shift the inconvenience from one party to another." (Opp'n at 6). But the Opposition contains no explanation for why Maryland is a more convenient forum than Massachusetts for Relator, a Texas resident. Thus, transferring this action to the District of Massachusetts would not "shift the

---

[5] The Court notes that Relator relies on two unpublished decisions by federal courts in West Virginia for support for his argument that his choice of venue in an FCA claim is entitled to deference. See United States v. Hobbs, No. 1:16CV236, 2018 WL 1368325 (N.D.W.Va. Mar. 16, 2018); United States v. Gwinn, No. CIVA 5:06-CV-00267, 2008 WL 867927 (S.D.W.Va. Mar. 31, 2008). However, as Fresenius correctly notes in its Reply, both these cases are distinguishable from the case at bar. In Gwinn, the connection between the plaintiff's choice of forum and the underlying dispute was not merely the presence of a relevant federal agency; rather the defendants' company "operated, submitted claims, received payments from Medicare, and pled guilty to criminal charges within the Southern District of West Virginia. Gwinn, 2008 WL 867927, at *18. Similarly, in Hobbs, the court noted that the agency's Morgantown, West Virginia location "was 'always the recipient' of those claims and, therefore, was 'always involved' in the events surrounding the presentment of false claims that form the basis of this FCA action." 2018 WL 1368325, at *10. These allegations create a far more substantial connection to the chosen district than those alleged by Relator in this action.

inconvenience from one party to another," but would shift the inconvenience from both parties to one party, with that party being equally inconvenienced in either forum.

Finally, the Court notes that while Relator has attempted to diminish the relevance of the party witnesses located in the District of Massachusetts, Relator has not proffered a single witness to this Court for whom Maryland would be a more convenient forum.[6] Relator asserts that he "has identified third-party witnesses with ties to Maryland, or at least who would be 'equally inconvenienced if they must travel to' Massachusetts." (Opp'n at 10–11 (quoting CV Restoration, LLC v. Diversified Shafts Sols., Inc., No. ELH-16-2102, 2016 WL 6648750, at *6 (D.Md. Nov. 10, 2016))). But a review of the Opposition reveals that Relator has only identified individuals in the latter category, which is meaningfully distinct from the first. As Fresenius correctly notes, "[i]nstead of discussing the convenience of Massachusetts versus Maryland for likely or possible witnesses, Relator compares the witnesses for whom Massachusetts is more convenient with witnesses for

---

[6] The one possible exception to this statement is Nicole Caucci, an attorney with the United States Department of Health and Human Services' ("HHS") Office of Inspector General ("OIG"). Relator asserts that Caucci worked from 2000-2004 in HHS's Washington, DC office, but concedes that she then relocated to Salt Lake City, Utah. (Opp'n at 9). Notwithstanding Caucci's apparent location on the other side of the country, Relator implies that the District of Maryland would be a more convenient forum for Caucci, asserting that "[s]ince government lawyers are required to attend any deposition of a former government employee in order to protect the government's privileges, any deposition of Mrs. Caucci will also take place in Washington, DC." (Id. at 10). Even granting the validity of Relator's strained logic, Relator is ultimately basing his argument on the location of counsel for Caucci, not Caucci herself. But "Section 1404(a) is concerned with the convenience of parties and witnesses and not with the convenience of counsel." Cronos Containers, 121 F.Supp.2d at 466 n.4. At bottom, the Court accords minimal weight to this isolated example of a purportedly inconvenienced witness who lives in Utah and whose counsel is located in the District of Columbia.

whom Massachusetts and Maryland are <u>equally</u> convenient." (Def.'s Reply Supp. Mot. Transfer Pursuant 28 U.S.C. § 1404(a) ["Reply"] at 8, ECF No. 66). Thus, the Court is presented with a scale containing on one side, a significant increase in the convenience for party witnesses, and on the other side, nothing.

Indeed, Relator has presented precious few arguments or facts regarding why Maryland would be a more convenient forum for him or his own witnesses. Other courts have relied on the absence of such a showing in finding that venue transfer was appropriate. <u>See, e.g.</u>, <u>Pac. Car and Foundry Co.</u>, 403 F.2d 949, 954 (9th Cir. 1968) (finding that the plaintiff made "no showing worth mentioning that its own convenience would be served by its choice of forum," leaving the court with "a choice of forum supported only by the fact that it was chosen"); <u>Fustok v. Banque Populaire Suisse</u>, 546 F.Supp. 506, 512 (S.D.N.Y. 1982) ("[P]laintiff does not offer a single compelling reason regarding his own convenience to support his choice of this forum."). Were it the case that Fresenius had presented no arguments regarding the convenience of Massachusetts, Relator's failure to persuasively argue for the convenience of this district may be immaterial. But given the Court's determination that Massachusetts will be a significantly more convenient forum for party witnesses, Relator's failure to offer anything to balance the scales leaves this factor favoring transfer.

### 3. Interest of Justice

The Court must also consider whether a transfer is in the interest of justice. "This factor is 'amorphous and somewhat subjective,' and allows a court to 'consider many things.'" <u>Gennari Consulting, Inc. v. Wellington Corp.</u>, No. ELH-19-1851, 2019 WL

6829102, at *9 (D.Md. Dec. 13, 2019) (quoting Wright & Miller, supra, § 3854). When considering this factor, a court "must weigh the impelling need for efficiency in the administration of our court system against the right of [the plaintiff] to continue the trial in a forum [it chose]." Id. (alteration in original) (internal quotation marks and citation omitted). In determining whether a transfer is in the interest of justice, courts in this circuit have considered "docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." Jaffe v. LSI Corp., 874 F.Supp.2d 499, 505 (E.D.Va. 2012) (citation omitted). Neither party advances an argument that either district possesses an uncommon knowledge of applicable law or that the venue of this case could give rise to an unnecessary conflict of law.

As to the remaining considerations, Relator notes that "the average time from filing to trial in Massachusetts was 32 months, compared to just 28 months in Maryland." (Opp'n at 15 n.8). "This Court has considered relative court congestion in determining whether a case should be transferred, although it is certainly not a significant factor." FedEx Ground Package, 2015 WL 790500, at *2 (citation omitted). Relator asserts the difference between the two districts is "no small variance." (Opp'n at 15 n.8). The Court disagrees. Given that court congestion is "certainly not a significant factor" in the Court's transfer analysis, the Court finds that a 12.5 percent difference in median time to trial—statistics which may have been radically altered in either district by the ongoing pandemic—is small enough as to be negligible.

As to the "interest in having local controversies decided at home," the Court finds that this factor augurs in favor of transferring this case to Massachusetts. As a neighboring court held, where "a substantial portion of the decisions that give rise to the . . . claim occurred at the defendant's headquarters," there is "a strong local interest in having the controversy decided in the [district in which those headquarters are located]." Hosch v. BAE Sys. Info. Sols., Inc., No. CV 13-146 (RBW), 2013 WL 12090305, at *3 (D.D.C. June 24, 2013). Thus, the District of Massachusetts has a significant local interest in resolving a claim involving wrongdoing occurring within its district by a very large employer headquartered in that district. Relator attempts to distinguish Hosch by asserting that it involved a situation "where the wrongdoing was localized," noting that in Hosch, the "wrongdoing occurred in Afghanistan and Virginia, so [the] case [was] transferred to Virginia." (Opp'n at 14). But as set forth above, the First Amended Complaint is replete with allegations that the fraud underlying this dispute occurred as a result of corporate-wide practices that originated in Fresenius' headquarters in Massachusetts. Thus, this case is similar to Hosch, and inasmuch as the wrongdoing here largely occurred in Massachusetts, that district possesses a strong local interest in resolving the claim.

Courts in this circuit have also held that it would be unfair to burden jurors with adjudicating a dispute that has no special connection to this district. See, e.g., Tse, 2006 WL 2583608, at *6 ("Maryland's interest in the case is no greater than that of any other state. Maryland jurors should not be burdened with adjudicating this case . . . ."); Orbital Australia Pty Ltd v. Daimler AG, No. 3:14VC808, 2015 WL 4042178, at *8 (E.D.Va. July 1, 2015) ("[I]t is fairer to burden jurors located in the Eastern District of Michigan than

jurors located in the Eastern District of Virginia. [Defendant] is located in Michigan and none of the parties call Virginia their home."). Here, the Court finds that it would be fairer to burden jurors in the District of Massachusetts with this action than jurors in this district.

For all these reasons, the Court finds that the interests of justice weigh in favor of transfer. Thus, in sum, the Court finds that (1) Relator's choice of venue is entitled to little deference; (2) Massachusetts is the more convenient forum for parties and witnesses; and (3) the interests of justice weigh in favor of transfer. Accordingly, the Court will transfer this action to the United States District Court for the District of Massachusetts.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Fresenius' Motion to Transfer (ECF No. 57). A separate Order follows.

Entered this 30th day of September, 2021.

_____/s/_____
George L. Russell, III
United States District Judge
